UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAL OMARI JACKSON,

                Plaintiff,                            Case Number 12-15474

v.                                             Honorable David M. Lawson
                                                 Magistrate Judge Charles E. Binder

ATHINA SIRINGAS, KYM WORTHY,
WAYNE COUNTY PROSECUTOR'S
OFFICE, COUNTY OF WAYNE,
CHARLES ZWICKER, DETROIT
POLICE DEPARTMENT, MARK
AMOS, CITY OF DETROIT, MARK
ESTRADA, WAYNE COUNTY
SHERIFF'S DEPARTMENT, BENNY
NAPOLEON, MARLON EVANS,
DEBORAH G. BLEDSOE FORD,
RICHARD M. SKUTT, METRO PCS
COMMUNICATIONS, DONALD
RICARDO SIMS, DRUG ENFORCEMENT
AGENCY, CLERK OF COURT FOR
THIRD JUDICIAL CIRCUIT OF WAYNE
COUNTY, MICHIGAN STATE ATTORNEY
GENERAL'S OFFICE, MICHIGAN
ATTORNEY GENERAL, PHILIP YAEGER,
CAPTAIN ROBERSON, SERGEANT
LOVING, JOHN DOE NOS. 1-2,
and JANE DOE NOS. 1-5,

                Defendants.

_____/

**<u>OPINION AND ORDER ADOPTING IN PART</u>**
**<u>REPORT AND RECOMMENDATION AND DISMISSING COMPLAINT</u>**

       This matter is before the Court on the plaintiff's objections to a report filed on October 31,

2012 by Magistrate Judge Charles E. Binder recommending that the Court dismiss this prisoner civil

rights case on its own motion under 28 U.S.C. §§ 1915(e)(2), 1915A. After giving fresh review to

the complaint, the Court agrees with the recommended outcome and finds that the complaint must

be dismissed. However, the Court cannot accept the magistrate judge's conclusion that the plaintiff

failed to present a "short and plain statement" of his claims, and that dismissal therefore is warranted under Federal Rule of Civil Procedure 8(a)(1).

The magistrate judge believed that the complaint was too long and cumbersome and laden with detail. At 131 pages containing 431 paragraphs, it certainly is long. But a new pleading regime is in its ascendancy; detail is the order of the day, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (requiring that a complaint plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face"), and "short and plain" may be no more than aspirational, lest Rule 8(a)'s language, as it is presently conceived, become a trap for the unwary.

Nonetheless, in this case the plaintiff has largely succeeded in presenting a "short and plain statement" of each of the individual claims stated in his complaint. The length of the complaint is due to the fact that the plaintiff raises a great number of claims, which are discussed below. Under the federal rules, that is allowed. "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

The plaintiff filed objections to the magistrate judge's report. The Court does not adopt the reasoning proposed by the magistrate judge, but instead concludes after undertaking a fresh review of the pleadings that the complaint must be dismissed because it fails to state any plausible claim for relief. The Court therefore will overrule the plaintiff's objections as moot.

I.

-2-

Plaintiff Jamal Jackson is presently confined in the Wayne County, Michigan jail awaiting his second trial on charges of assault, murder, and firearms violations. According to Jackson's complaint, the principal witness against him is Donald Ricardo Sims, who in 2006 pleaded guilty to possession of marijuana after a DEA raid on his house. Jackson asserts that after Sims pleaded guilty, he identified Jackson in a photo lineup and testified at the 2009 trial of Jackson's codefendant, implicating Jackson in the 2006 murder of Sims's brother. Detroit Police arrested Jackson on September 20, 2011 and charged him as noted above. Jackson's first trial started on May 29, 2012, but it ended in a mistrial. At the time the complaint was filed, Jackson was scheduled to be tried again in November 2012. Based on his most recent filings in this matter, it appears that Jackson remains incarcerated and awaiting trial.

Jackson filed his complaint under 42 U.S.C. § 1983, claiming that the various defendants have "conspired" to violate his constitutional rights through numerous specific acts and omissions. As mentioned, the complaint is extensive. Paragraphs 1 through 72 recite the chronology of the plaintiff's criminal proceedings and identify the defendants. Paragraphs 73 through 431 contain the substance of the plaintiff's claims. The claims divide broadly into two categories: (1) claims of constitutional errors and violations of Jackson's rights in the course of his criminal prosecution for murder and related crimes; and (2) complaints about the conditions of confinement that the plaintiff alleges he has endured while confined at the Wayne County jail since his arrest.

The Court finds that the claims in the first category must be dismissed because a civil complaint under 42 U.S.C. § 1983 is not a proper vehicle for pursuing them. In addition, a number of the defendants accused in these claims either are immune or otherwise not amenable to suit under the civil rights statute. All of the claims in the second category must be dismissed as well, in most

-3-

instances because they fail to allege that the plaintiff has suffered actual harm from the conditions about which he complains, and in the remainder because they do not adequately plead conditions that rise to the level of an invasion of the plaintiff's constitutional rights.

<div align="center">II.</div>

The plaintiff requested and was granted permission to proceed *in forma pauperis*. When a plaintiff asks the court to waive fees and costs because he cannot afford to pay them, the Court has an obligation to screen the case for merit and dismiss it if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "A complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28).

Although a *pro se* litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), such complaints still must plead facts sufficient to show a redressable legal wrong has been committed, Fed. R. Civ. P. 12(b)(6); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 755 (E.D. Mich. 2001). "The leniency granted to *pro se* [litigants] . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The screening mandated by Congress in section 1915(e)(2) includes the obligation to dismiss civil complaints filed by prospective *pro se* filers if they "fail to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). To avoid dismissal, a complaint must include "enough facts to state

<div align="center">-4-</div>

a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *Sua sponte* dismissal is appropriate if the complaint lacks an arguable basis when filed. *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. 2001).

"Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The plaintiff must establish the liability of each individual defendant by that person's own conduct. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

A. Conspiracy

As an initial matter, all of the plaintiff's claims for "conspiracy" must be dismissed because he has failed to plead adequate facts to raise any plausible claim that any of the defendants conspired to violate his rights. The entire conspiracy allegations in the complaint read as follows: "[The prosecutors, judges, and attorney Evans] and others are all working together to impede the legal process to negatively impact plaintiff, Compl. ¶ 154; "the prosecutors, police, judges, and attorney Evans] all know that there is not enough evidence to support any of the charges against plaintiff," Compl. ¶ 155; "[defendants] are all working together individually, collectively, directly, and indirectly to deprive plaintiff of his liberties," Compl. ¶ 198; and "[t]he actions and non-actions of [defendants] suggest they are all conspiring together individually, collectively, directly, and indirectly to deprive plaintiff of his life, liberty, and property and other rights guaranteed by the Civil Rights Act and the United States Constitution," Compl. ¶ 314. These are just the sort of conclusory, unsupported allegations that the Supreme Court in *Twombly* and *Iqbal* admonished district courts not to tolerate. Those conclusory allegations are not entitled to a presumption of truth, and they suggest nothing more than the possibility of illegal behavior. No part of the complaint supplies the necessary specific facts to show conduct that is more than "merely consistent with" illegal behavior, and none of the allegations stated nudge the conspiracy claims over the line from "possible" to "plausible."

### B. Parties

With regard to the parties, all of the claims must be dismissed against two groups of defendants, because they either are immune from or are not amenable to suit under 42 U.S.C. § 1983. First, civilian witnesses Donald Sims and Philip Yaeger; Jackson's defense counsel Marlon Evans; and defendant Metro PCS Communications must be dismissed because they are not alleged

to be state actors, as they must be in order for their conduct to be subject to the civil rights statute. Second, the prosecutors, judges, and the clerk of court all must be dismissed because they are entitled to absolute prosecutorial, judicial, or quasi-judicial immunity for their conduct relating to the litigation of criminal charges against the plaintiff.

    1. Donald Sims, Philip Yaeger, Marlon Evans, and Metro PCS Communications

Defendants Sims, Yaeger, Evans, and Metro PCS all must be dismissed because nothing in the complaint suggests that they are "state actors." In order for liability to attach under § 1983, "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color of law' for purposes of the statute. To act 'under color of law' does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Id.* at 941 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)) (quotation marks omitted). The plaintiff does not show how, if at all, Sims or Yaeger as civilian witnesses in Jackson's criminal proceedings participated in any "joint activity" with state officials. Likewise, he has pleaded no facts to show that Metro PCS was performing any public function, that it operates under the control of state officials, or that it did anything more than provide private commercial telephone services to jail inmates.

Attorney Evans must be dismissed because it is well established that a defense attorney is not a state actor under 42 U.S.C. § 1983. Absent some plausible and specific factual showing that he acted in concert with state officials to deprive the plaintiff of some constitutional right, a criminal

-7-

defense attorney is not a "state actor" and is not subject to suit under 42 U.S.C. § 1983.  *Elrod v. Michigan Supreme Court*, 104 F. App'x 506, 508 (6th Cir. 2004); *accord Bomer v. Muechenheim*, 75 F. App'x 998, 999 (6th Cir. 2003) (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). Jackson alleges that Evans failed him as an attorney in numerous ways, but he offers no facts to show that any of those failures were the result of action taken in concert with state officials.

> 2. Athina Siringas, Kym Worthy, Wayne County Prosecutor's Office,
> Deborah G. Bledsoe Ford, Richard M. Skutt, and Wayne County Clerk of Court

The plaintiff's claims against the prosecutors and the judges involved in his criminal case must be dismissed because they are immune from suit.  In *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997), the court determined that judges, when performing judicial functions, are entitled to absolute immunity from suits for money damages.  Judicial immunity is abrogated only when a judge is not acting in a judicial capacity, or when the judge takes action in the absence of jurisdiction, which is not alleged here.  *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).  "Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability."  *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000).  A prosecutor has absolute immunity for all acts "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Sixth Circuit has held that

> [t]hose acts that occur in the course of the prosecutor's role as an advocate for the state, e.g., acts taken to prepare for the initiation of judicial proceedings or to prepare for trial, are protected by absolute immunity.  By contrast, a prosecutor who "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" is entitled only at most to qualified immunity.

-8-

*Cooper*, 203 F.3d at 947 (internal citations omitted).  As with judicial immunity, the motives of the prosecutor are irrelevant for purposes of immunity.  *Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003).

The claims relating to the plaintiff's pending criminal prosecution focus entirely on the prosecutorial and adjudicative roles of the state prosecutors and judges.  Those individuals, therefore, are immune from suit.

The claims against the Wayne County Clerk for refusal to copy and return certain documents also must be dismissed, because the Clerk is entitled to quasi-judicial immunity for official actions taken to carry out the business of the court.  "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune."  *Bush*, 38 F.3d at 847.  "An official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of enforcing or executing a court order is intrinsically associated with a judicial proceeding."  *J.P. Silverton Industries L.P. v. Sohm*, 243 F. App'x 82, 89 (6th Cir. 2007) (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000)) (quotation marks and alterations omitted).

### 3. Drug Enforcement Agency, Michigan State Attorney General's Office and Michigan Attorney General

Defendant the Drug Enforcement Agency must be dismissed because the complaint simply alleges no wrongful conduct involving the plaintiff or his rights.  Other than in the paragraphs stating the conclusory allegations of conspiracy discussed above, the complaint only mentions the DEA in two paragraphs (35 and 373), neither of which assert anything other than historical facts about the agency's actions.  The entire allegations of the complaint are that the DEA executed a search warrant at the home of witness Sims, recovered a gun and some drugs, and that Sims later

-9-

entered into a plea agreement with the government on charges stemming from the evidence recovered. Nothing in the complaint demonstrates how any conduct of the agency was improper, or if it was how that improper conduct affected the plaintiff's rights.

Defendants Michigan Attorney General and AG's office must be dismissed, because the complaint alleges nothing more than that these defendants "knew of" alleged wrongful conduct by various other defendants and "did nothing" to stop it. It is well established that mere knowledge and failure to act do not render a party liable under 42 U.S.C. § 1983. Instead, the plaintiff must show that a defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008). It is not enough to show merely that a defendant knew of unconstitutional conduct and failed to act. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Rather, the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). The complaint offers nothing to support the required showing as to these defendants.

### C. Criminal Prosecution

Paragraphs 73-198, 286-87, 290-373, and 430 include a long list of alleged constitutional defects and violations in the continuing criminal proceedings against the plaintiff. None of those claims is cognizable in an action under 42 U.S.C. § 1983, because they all amount to challenges to the plaintiff's criminal prosecution and incarceration, and the plaintiff has not made any showing that his prosecution has been set aside or declared invalid. "In general, a state prisoner does not state a cognizable claim under § 1983 if a ruling on his claim would necessarily imply the invalidity of his conviction and confinement, until the conviction has been reversed on direct appeal, expunged

-10-

by executive order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus." *Reese v. Gorcyca*, 55 F. App'x 348, 349 (6th Cir. 2003) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schilling v. White*, 58 F.3d 1081, 1085-86 (6th Cir. 1995)). "Moreover, 'the concerns of *Heck* apply pre-conviction as well as post-conviction.'" *Ibid.* (citing *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398 (6th Cir. 1999)). "Thus, '*Heck* precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges.'" *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). All of the claims relating to the plaintiff's ongoing criminal prosecution therefore must be dismissed.

### D. Jail Conditions

Paragraphs 199-289 and 374-431, excepting the specific paragraphs noted above, all concern the plaintiff's claims about the conditions of his confinement at the Wayne County jail since his arrest. Jackson recites a litany of complaints about all manner of generally uncomfortable, unsanitary, inconvenient, annoying, and in some cases plainly disgusting aspects of the accommodations at the jail. He alleges that he has endured eating unpalatable and unidentifiable food; using cloudy and malodorous tap water; wearing the same county issued "greens" uniform for months without access to a laundry; using a single public telephone that was cleaned only "once or twice" since he has been in the jail; sleeping and showering with overflowing toilets and showers that resulted in fetid water standing in cells or bathrooms for days; riding in a shaky and dangerous elevator; dodging wild birds flying around in his housing unit; rooming with mentally ill inmates and inmates sick with contagious diseases such as Methicillin-resistant Staphylococcus aureus

(MRSA); being served "Cool Shots" drinks at every meal, which the plaintiff alleges can cause "kidney problems and cancer," and which, "when spilled on the floor or wall leaves a permanent stain that cannot be removed by any chemical"; and generally abiding day-to-day life in a housing unit, the whole of which "smells like feces, urine, dirty clothes and sweaty genitals."

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the challenged condition is not a criminal penalty, then it may not amount to an "'unnecessary and wanton infliction of pain'" lest it violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). What constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). The same rules apply to pretrial detainees via the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 594 (1979) (noting that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional

-12-

rights that we have held are enjoyed by convicted prisoners"); *Rose v. Saginaw Cnty.*, 353 F. Supp. 2d 900, 918-20 (E.D. Mich. 2005).

The objective prong requires a showing that the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349. To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

To satisfy the subjective prong, the plaintiff must show that the officials acted with a sufficiently culpable state of mind; that is, that the conduct was "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under that standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844-45. "'Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence,

-13-

will not suffice." *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Where the plaintiff alleges "that the conditions of [his] confinement [pose] a serious risk of substantial harm to [his] health, in violation of the Eighth and Fourteenth Amendments[, he] must show that the county [or individual defendants] were deliberately indifferent to that risk." *Bowers v. Livingston County*, 426 F. App'x 371 (6th Cir. 2011) (citing *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)). "[The inmate] must show that [an individual defendant] was personally aware of facts from which he could infer an unreasonable risk of serious damage to [the inmate's] future health, and that he did in fact draw the inference." *Id.* at 372-73 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

Despite his understandable complaints, the plaintiff has failed to state any plausible claims for relief relating to unsanitary conditions, because in most instances he does not allege that he suffered any actual harm from the conditions he describes, and in those cases where he does allege harm, it is not sufficient to demonstrate a serious risk of substantial harm to his health that would rise to the level of a constitutional violation.

In the case of most of the claims described above, the plaintiff alleges only that the conditions create a "risk" or "danger" to his health, and he does not assert that he has suffered any actual health consequences or injuries. Jackson comes close to describing actual harm where he alleges that as a result of the backed up showers, county maintenance personnel used some form of acid or caustic solution to clear the blocked drains, which generated "reeking fumes" that caused his eyes to water and caused him almost to pass out. Compl. ¶¶ 267-69, 382-83. He does not, however, allege that he suffered any lasting harm to his health from the plumbing incidents, and therefore he

-14-

has not pleaded that the conditions were sufficient to create a substantial risk of harm or any lasting injury. Jackson also describes "skin irritation," "black spots" on his skin, and "light headedness" that he has developed as a result of showering in areas with black mold and sleeping on a filthy mattress, Compl. ¶¶ 273, 395-96, 387, but these complaints likewise do not demonstrate that he has suffered lasting or substantial harm to his health as a result of the jail conditions.

As to his confinement with inmates having infectious diseases, the Sixth Circuit held in *Bowers* that even plaintiffs who became infected with MRSA, but who were treated for the disease and recovered, could not demonstrate any Eighth Amendment claim, despite the fact that the court of appeals found that "it is undisputed that, once contracted, an MRSA infection can be quite serious . . . [the sheriff] knew that there had been MRSA infections in the jail before[,] and . . . the jail's lack of preventative measures made infections likely in the future." 426 F. App'x at 373.

Because the plaintiff has failed to establish that any of the conditions he describes posed an unreasonable risk of serious harm to his health, all of the claims relating to the unsanitary and unsavory conditions of his confinement must be dismissed.

### E. Insults and Invasion of Privacy

The plaintiff alleges that several of the named or anonymous defendant jail guards verbally insulted him or invaded his privacy. In particular, Jackson alleges that jail guard Jane Doe II (1) responded to a question put to her by the plaintiff by saying, "Don't make me slap the black off you," Compl. ¶ 225; (2) made the plaintiff take down sheets he had hung up for privacy in his cell while he was still using the toilet, Compl. ¶¶ 236-41; and (3) "looked directly at [plaintiff's] genitals while he was in the shower, Compl. ¶ 409. Those claims, like the plaintiff's other complaints about "invasion of privacy," fail to allege any constitutional violation. A jail inmate does not have a

-15-

reasonable expectation of privacy in his cell. *Hudson v. Palmer*, 468 U.S. 517 (1984). "[V]erbal insults of an inmate have not been deemed actionable in actions brought pursuant to § 1983." *Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)). Moreover, the Sixth Circuit has held that a strip search of a male prisoner in the presence of a female guard does not violate either the Fourth or the Eighth Amendment. *Roden*, 84 F. App'x at 613. The plaintiff also alleges that he was subjected to strip searches at various times, but he does not provide any specific facts to show why the searches were unreasonable in scope or unjustified in the course of jail operations.

### F. Inmate With a Gun

The plaintiff claims that jail officials endangered his life when on one occasion they allowed an inmate who had a gun on his person to enter the jail. That claim must be dismissed because, despite the apparent and alarming security breach, the plaintiff does not allege that he or anyone else suffered any harm from the incident. Moreover, the plaintiff does not allege any specific facts that would establish which, if any, of the named defendants was involved in allowing the armed inmate to enter the jail, or that any defendant knowingly did so. Jackson therefore cannot establish that any named defendant deliberately disregarded any risk to his welfare as a result of this event, and negligence by jail officials is not actionable under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327 (1996). Jackson also does not allege that the entry of an armed inmate resulted from any policy, custom, or practice of the County or the jail.

### G. Involuntary Servitude

Jackson complains that on the occasions when the toilets overflowed jail officials told inmates they would have to either clean the mess up or "sleep with it," and that inmates also were

-16-

compelled to scrub and clean the housing unit area on a routine basis, under threat of losing various privileges if they did not comply.  Jackson contends that he thus was subjected to "involuntary servitude."  However, as several courts of appeals have held, requiring a pretrial detainee to help clean his living unit, including common areas, does not amount to involuntary servitude as prohibited by the Thirteenth Amendment.  *Bijeol v. Nelson*, 579 F.2d 423, 424 (7th Cir. 1978).  "Daily general housekeeping responsibilities" are not inherently punitive and do not violate either the Due Process Clause or the Thirteenth Amendment's ban on involuntary servitude.  *Id.*; *accord Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992).  That claim therefore is without merit and must be dismissed.

### H. Telephone and Mail Access

Jackson alleges that at various times he suffered delays in delivery of his "important mail," adding phone numbers to his phone list, and crediting payments to his inmate telephone billing account.  He alleges that as a result of those obstacles to his contact with persons outside the jail, his ongoing business enterprises and his personal relationships with family members suffered.  Jackson also contends that the "Sheriff's Dept. neglects to give Plaintiff his Detroit newspaper he subscribed to."  Compl. ¶ 210.

The Supreme Court has recognized that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley*, 482 U.S. 78, 84 (1987), and they do not "bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside,'" *id.* at 94-99."  Prisoners retain their First Amendment rights to communicate with family and friends, *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), and "reasonable access to the [use of a] telephone . . . is protected by the First Amendment," *ibid.* (quoting *Johnson*

*v. Galli*, 596 F.Supp. 135, 138 (D. Nev. 1984)) (quotation marks omitted). "Nevertheless, an inmate 'has no right to unlimited telephone use.'" *Ibid.* (quoting *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). "'The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions.'" *Ibid.* (quoting *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563-64 (D. Kan. 1993). Jackson has failed to establish a constitutional injury to his First Amendment rights, because the complaint does not allege that he was denied contact with the outside world altogether, or that he was subject to unreasonable restrictions on his use of the telephone and mail. Moreover, even if he was subject to diminished or delayed contact during some periods, he does not allege that alternative avenues of contact such as direct visitation were closed to him at those times.

Moreover, because he only alleges isolated instances of delays and obstacles in his use of the telephone and delivery of his mail, he has not shown that he suffered a significant injury to his First Amendment rights sufficient to state a claim under 42 U.S.C. § 1983. "[S]hort, non-content based delays in prison mail are not unreasonable and fail to state a constitutional question." *Cotten v. Schotten*, No. 95-4085, 1997 WL 299386, at *1 (6th Cir. June 4, 1997) (citing *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)). "[I]solated incidents of mail mishandling do not rise to the level of a constitutional violation." *Couch v. Jabe*, No. 11-00034, 2012 WL 3043105, at *8 (W.D. Va. July 25, 2012). As noted above, to the extent that the plaintiff alleges claims for "breach of duty" by jail officials resulting in the delay or withholding of mail and phone privileges, or "neglecting" to deliver his newspaper, negligence by jail officials is not actionable under 42 U.S.C. § 1983. *Daniels*, 474 U.S. 327.

-18-

I. Access to the Courts

Jackson alleges that his access to the courts was obstructed by various circumstances at the jail, including the departure without replacement of a law librarian, rules that allowed use of the law library only one or two days before a scheduled hearing, policies restricting him to buying only five pencils at a time, and a policy prohibiting use of pens by inmates.  Those claims are all subject to dismissal because Jackson has not alleged that any of the impairments resulted in actual prejudice to him in any legal proceeding.   "Prisoners have a right of access to the courts." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)).  "In order to state a claim for denial of meaningful access to the courts, however, plaintiffs must plead and prove prejudice stemming from the asserted violation.  Plaintiffs must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Ibid.* (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

As the complaint makes clear, Jackson was represented by counsel in his criminal proceeding, and evidently still is.  He alleges in vague and conclusory terms that he was prevented from raising a "wide variety of arguments" during his criminal prosecution, and that the jail policy prohibiting use of pens conflicts with an alleged Wayne County circuit court policy that prohibits the filing of any papers written in pencil.  But he alleges no specific facts to show that he missed any deadline, had any pleading or paper refused or dismissed as untimely, or suffered any other substantial prejudice during the course of his criminal case.  Indeed, as his lengthy complaint in this matter and numerous subsequent filings demonstrate, the plaintiff's access to the federal district court apparently has not been obstructed in any significant way.

-19-

Jackson also alleges that the jail refused to release $1,900 cash from his inmate funds account to his mother, which he alleges he had directed her to use to retain a lawyer to represent him in his criminal case.  However, as noted above, Jackson was represented by counsel in his criminal proceedings.  Despite his obvious dissatisfaction with the performance of his attorney, he has not sufficiently stated any claim that a jail policy on release of inmate funds prevented him from receiving the assistance of counsel for his defense.

<center>J. Denial of Dental Care</center>

The most serious claim that Jackson raises concerns the alleged denial of dental care for ten months, during a period when he suffered pain due to cavities, "broken fillings," and "bleeding teeth and gums."  The complaint alleges as follows:

> 274. Plaintiff put in 2-3 dental kites in 2011 due to broken fillings and bleeding teeth and gums.
>
> 275. Plaintiff finally saw county dentist in early August of 2012 and after telling them about his cavities, bleeding and pain they told him there was nothing they could do and to take care of it when he got out.
> . . .
> 399. The failure of County Jail dentist to answer plaintiff's dental kite until (10) months later citing a broken filling and bleeding teeth and gums though dentist informed plaintiff there was nothing they could do constituting neglect, deliberate indifference towards plaintiff's dental needs, and cruel and unusual punishment . . . .

Compl. ¶¶ 274-75, 399.

The county's failure to provide necessary medical care to prisoners can establish a cause of action under section 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1986).  The Fourteenth Amendment, by extension of Eighth Amendment jurisprudence, protects pretrial detainees against the deliberate indifference to their serious medical needs by their jailors.  *Farmer v. Brennan*, 511 U.S. 825 (1994).  Once again, courts apply a test that has both an objective and subjective

<center>-20-</center>

component. *Napier*, 238 F.3d at 742. To succeed on a claim of deliberate indifference, the plaintiff must plead facts on both components: the objective serious medical need, and the defendant's subjective deliberate indifference to it. *Farmer*, 511 U.S. at 834.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 707 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The Sixth Circuit further noted that

> [a]lthough the plaintiff bears the onerous burden of proving the official's subjective knowledge, this element is subject to proof by "the usual ways." *Farmer*, 511 U.S. at 842. Thus, the Supreme Court noted that it was permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge. *Id.* at 842. Moreover, the Court warned, a prison official may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8.

*Id.* at 703.

Deliberate indifference is the "equivalent of recklessly disregarding [a substantial risk of serious harm to a prisoner]." *Dominguez*, 555 F.3d at 550 (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008)). However, the Sixth Circuit also held that "less flagrant conduct may also constitute deliberate indifference in medical mistreatment cases." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). The Sixth Circuit endorsed the standard of "grossly inadequate medical care," under which that element is satisfied when medical treatment is

-21-

"'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Id*. at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)).  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).  "Deliberate indifference is not mere negligence," *Watkins*, 273 F.3d at 686, and mere allegations of malpractice are insufficient to state a claim, *Estelle*, 429 U.S. at 106.

If the doctors or nurses that the plaintiff saw were either county employees or private medical treaters acting under a contract to provide medical services to jail inmates, then they were without doubt state actors.  It is well settled that a private physician under contract to provide medical services to jail inmates acts under color of law and is subject to suit under section 1983.  *See Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008) (citing *West v. Atkins*, 487 U.S. 42 (1988)).  However, even if the Court assumes that the plaintiff has pleaded that he had an objectively serious medical need, the claims relating to his delayed or denied dental treatment must be dismissed because he has failed to name as defendants — either by proper name or anonymously — any of the dental care providers that allegedly denied him treatment.  And he does not allege that any of the defendants that he did name had any part in preventing or delaying his visit to the dentist.  Jackson alleges that the dentist he saw told him there was "nothing they could do," but he has not shown that this refusal to treat him involved any deliberate act of one of the named defendants.

Moreover, Jackson has not alleged that the refusal was compelled by any policy, custom or practice of the County, the jail, or the sheriff.  The complaint refers to a policy that requires inmates to pay $5 per visit to the dentist, but it does not assert that any inability to pay the fee caused the

-22-

delay in treatment, or that the plaintiff's dental care was delayed because he refused to pay.  The County, the jail, and the sheriff cannot be held liable under 42 U.S.C. § 1983 for the acts of private or public employees providing medical treatment, unless the plaintiff can show that the conduct of the medical treaters was dictated by official policy of an organizational or supervisory defendant. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010).  A claim against a municipality or organizational defendant under section 1983 must be based on the organization's own conduct, meaning that it must spring from its official policies, customs or practices.  *Monell*, 436 U.S. at 691.  The plaintiff must plead facts that show that his harm resulted from an organization's policies, customs, or practices in order to establish supervisory liability of an organization that provides medical services to a jail.  *Starcher v. Correctional Medical Services, Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (civil rights liability of contract provider of medical services to prisons cannot be premised on *respondeat superior*).  He has failed to do so.

<div align="center">III.</div>

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #20] is **ADOPTED IN PART**, and the plaintiff's objections [dkt. #22] are **OVERRULED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion for immediate transfer [dkt. #13] and motion for preliminary injunction [dkt. #17] are **DISMISSED** as moot.

<div style="margin-left:40%">
s/David M. Lawson          
DAVID M. LAWSON
United States District Judge
</div>

Dated:  July 23, 2013

<div align="center">-23-</div>

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 23, 2013.

s/Shawntel Jackson
SHAWNTEL JACKSON